Harbor. My name is Donato Caruso and I represent Appellant New York Shipping Association. We submitted a joint brief with three other appellants, International Law Insurement Association and two of the ILA's locals. Mr. Kevin Maronin, who is seated to my right, is counsel to the International Law Insurement Association and the other two locals and we would ask the court's indulgence if I were to present an argument for eight minutes and that we reserve two minutes of rebuttal and Mr. Maronin would present the rebuttal. This would enable the court, if they have any specific questions relating to the unions, to ask Mr. Maronin those questions at that time. All right, thanks very much Mr. Caruso. May I begin? Yes. This case involves a novel issue related to a Waterfront Commission compact, which is an interstate compact between the states of New York and New Jersey, that came into being in 1953 as a result of serious conditions that existed in the port at that time that were identified by state crime commissions for both New York and New Jersey. The compact was one of a special kind because the congressional consent was not only given to the provisions of the compact, but also to future supplements or implement the purposes of the compact. And the case here really centers on an amendment that was adopted in 1999 to a section 5P, not of the compact but of the Waterfront Commission Act, which consists of the compact plus supplemental provisions. 5P was a supplemental provision that to control the size of the workforce in the port for two purposes. One was to keep it in balance because there was a concern that if it was out of balance that conditions could arise that could lead to criminal exploitation of the workers. The second reason was that as a result of collective bargaining negotiations between New York Shipping Association Inc. and the ILA, a guaranteed annual income program was placed into effect because of the existence and introduction at that time of the process of containerization, which has kind of swept the industry and is now the main mode of transport, but at that time the main mode was the physical loading and unloading of cargo piece by piece. Containerization improved the productivity in displaced the work of the existing workforce and we agreed to provide the workforce with a guarantee of 20-40 hours of wages if as a result of no fault of their own these individuals were not able to have work at that level. And the concern was if the current state of the compact allowed individuals to come into the workforce at will that it would create a situation where the work would be performed by the new individuals coming in while the other individuals who had the protection of the guaranteed annual income would be receiving wages, so you would be paying twice for the same work. Those were the purposes, but they're not an issue here and we're not contending that 5P was in any way unconstitutional. You're going to address the amendments that require the to adopt anti-discrimination policies. I'm sorry let the hiring be consistent with the anti-discrimination principles. I think that's the point that we're arising at. There's never been any provision anywhere in the compact that has anything to do with the eradication of employment discrimination, but in 1999 there was a an amendment to section 5P and the amendment in the act a certification that required the employers sponsoring these new individuals to sign a certification or submit a certification that they had been selected in accordance with the federal state and local employment discrimination statutes. On the face of things it looks like it looks like a very good thing to have you take issue with it. We don't disagree that it's a good thing but in order for it to be constitutional it requires the consent of congress. Congress hasn't passed any judgment on whether it's a good thing or not. The problem with it is it's a major problem for us. Congress gave the compact an amazing ability to pass amendments. They did, but you have to it has to be in accordance with the purposes of the original compact and I don't think anyone in this room has to have if you read the compact itself there's not a provision in there that in any way addresses discrimination of any kind. There are no standards set forth. There are no procedures set forth. You do not consider discrimination to be a corrupt hiring practice. I'm sorry you're on. You do not consider discrimination to be a corrupt hiring practice. I do not consider discrimination to be the corrupt hiring practice. It was quite broad in saying our aim is to stop corrupt hiring practices in the port of New York and although anti-discrimination is not specifically listed there was testimony before congress when the compact was being considered by it about one of one of the bad practices of hiring was discriminatory discrimination race discrimination. Your honor I think there was one I think uh witness at that time wasn't it wasn't a legislator it was a witness who mentioned that he was the head of a of a african-american local in New York and that the shape-up system at that time in his opinion was being used to discriminate against his employees but how many times did a problem have to be mentioned to have it that's the only time that was mentioned well does that mean it wasn't a problem but nothing was done about it I mean if you look at the statute here's the problem we have we have an agency that's telling us you have to do x y and z and you have to comply with these laws uh and there's no standard in the act in the orphan commission act that gives us any idea of what do these laws mean and this agency really doesn't have the expertise to really make that judgment well I can see why you might argue that before the amendment but since the amendments spelling out that that these hirees have been hired in a manner free of discrimination now you got the specifics right I don't think we have the specifics there's no specifics in the act against discrimination it would be the I would think there's federal there's state statutes there's the uh equal employment there's a civil rights act 1964 uh but there's nothing spelled out in the act if there's a violation of those statutes that's up to the agencies who who have the expertise to implement those statutes ask you something mr caruso article 1 section 4 of the compact says that the commission regulates the occupations of longshoremen in the public interest and as an exercise of the police power of the two states jointly it seems to me that racial fairness is surely a public interest and ensuring it with the police power what's wrong well again uh I I don't think you you had that uh there was no effort by congress to address those issues two of the well as you say congress uh vested a great deal of discretion in the commission to make policies respecting hiring with respect to racial and discrimination I don't find that in the statute with all due respect it's not in the statute and it's not in the legislative history there was a specific statement made by two individuals at the time congressman seller as well as the uh austin tobin who was the executive director of the port authority of new york and new jersey who said that the fair employment statutes were never mentioned any time during the debates or during the consideration there is no dispute whatsoever just hypothetically speaking no dispute whatsoever that there is a great deal of racial discrimination in the hiring of longshoremen all right your your position is that there is nothing that the waterfront commission can do to e to alleviate or in fact erase that racial discrimination well I don't think there is racial discrimination if there's a problem if there's a problem who can fix it I think the agencies that have been given the expertise and the authority to implement those statutes not the border front commission because in this case what they're doing is they're judging us without hearings without any sort of of procedural protections and they're telling us that we don't like what you're doing and we're not going to allow you to hire there are two things that but it must be made on a fair and non-discriminatory basis would you argue that fairness is not a component of having non-corrupt hiring practices that you can be unfair and still be non-corrupt uh it is not unfairness corruption again the use of those terms if you go back to the original compact nowhere in that compact does it ever say that the commission has the duty to implement what we're dealing with is is uh is uh an amendment to effectuate the purposes right okay one of the purposes was corruption to to weed out corruption in the hiring practices to shape up you you you and you it's very easy to be discriminatory and unfair even if they're all white so we don't need to necessarily talk about race here what we're talking about is fairness in the selection of uh in the employment practices isn't that correct that's correct but the statute specifically said for certain substantive provisions to address that issue and and those substantive provisions are being complied with it did not give discretion widespread discretion to the commission to get engaged in any other types of activities that problem was solved by registering the longshoremen making sure they weren't having any criminal background licensing the hiring agents and the stevedores and uh as well as uh providing that the hiring would be would be done out in the open in the presence of the waterfront commission so that there would be no corruption in connection with that hiring so your time is up thank you very much eight minutes goes fast mr hughes thank you your honor uh peter hughes representing the metropolitan marine contractors association um i think i've reserved three minutes for rebuttal i thought it was all right go ahead okay um if i could just start by addressing judge nygaard's question uh i don't think there is anything in the original compact regarding fair employment practices which is a rather ambiguous term and i would submit that fairness like beauty is in the eye of the beholder and it is not up to the commission to identify every possible unfairness in the selection of individuals even though racial racial practice i think the critical question your honor is whether the congress when it approved the compact in 1953 when plessy versus ferguson was still the law of the land whether the congress thought that discrimination was a corrupt practice well with the extent of the ability to amend uh that was given to the compact uh are you an originalist are you saying they can only deal with problems that had been recognized back in 1953 or uh is it possible that with the breadth of possible amendment that they could deal with problems that arose after 1953 in view of the ability to make such amendments i think your honor that the very fact that the congress permitted a going forward ability of the legislatures to amend is indication that they indicate they wanted that to be limited to a narrow field of play again if you go back i think that's somewhat counterintuitive we're giving you a broad ability to amend but we only want you to apply it very narrowly that that we are giving a broad authority to amend within to to address the issues that have been identified that led to the enactment of this compact where are the issues identified in the compact where it talks about the criminal elements and that's why among the information that can be asked of applicants for license is the name whether they have a criminal conviction um and that information there is nothing in the original rules there was nothing in the enacting statutes that enabled anybody to ask an applicant their race much less their gender i mean of all the things that the council for commission has identified there's nothing about gender and now this law that's in that is enacted the 5p amendment in 1999 not only says you can't discriminate on the basis of race which you know they've identified a single witness out of 300 that testified who who identified that racial discrimination might be an issue so probably in 1953 there weren't any women applying anyway to be longshoremen uh isn't that i think quite possible i don't know that likely i was i was very much aware of what was going on in 1953 and and i was a great fan of on the waterfront and certainly in that movie there weren't women applying well it was ava murray savior yeah but this is a problem which has arisen and are you saying because the problem of hiring women has arisen since 1953 the compact can do nothing about it no in essence yes your honor because both states at the time the law was enacted had created statutory uh had created statutes with administrative agencies who were responsible for enforcing the non-discrimination laws in those states and i think it's clear that the assumption is that those agencies would enforce those laws in fact well how how how do you enforce an anti-discrimination law against this type of situation where the employers are setting forth names to be included in the registered list but you can't say that the employer has refused to hire someone because the hiring is not done at that stage where the employer is in contact with the applicant well your honor i i would say actually counsel for the commission has supplied that the answer to that question and by putting forth evidence regarding a complaint that was filed by the new york state human rights commission in which the human rights commission filed a complaint against the ila my client the new york shipping association alleging that all of them failed to applying discriminatory policies in hiring again that was totally inappropriate since this was a 12b6 motion and nothing outside should have brought in but since it's in front of your honor there is an agency that is authorized to do that and that the union and the companies are within the jurisdiction of the eeoc they're within the jurisdiction of the new york human rights commission and they are within the jurisdiction of the new jersey division on civil rights and what was what was the outcome of this complaint there is no outcome it is ongoing so it what we really have your honor the danger here is a risk that there's already three agencies and now the commission may come in and say well no we want you to do something differently we're going to ask you to do anything differently they just they just want to ensure that there is no discrimination in the hiring process again that is for that is to be enforced by the agencies that have actually been created for that purpose i don't think there's any preemption i'm sorry i don't think there's any preemption that that you can't bring a failure to hire a complaint unless you do it through the eeoc or through the state agencies well on a discriminatory basis your honor well under the state rules under the state law of new york and new jersey you can directly file a lawsuit in court and don't have to go through the agency the agency that is most directly involved in the hiring process is the commission isn't it well it's actually just a licensing board your honor position that they have taken many times it is but it is the commission that is asking asking the employers to submit to it evidence that there is no discrimination or it is at least telling employers that shall not discriminate on the basis of race or gender and certainly there's plenty of case law that will permit you lawyers to advise the employers and the unions to what the requirements of equal protection laws are well but your honor then that again there is but i see that my time is up you can answer okay but we also have the intersection here your honor of the collective bargaining process which supersedes this well it supers it doesn't collective bargaining the compact says that article 15 guarantees that hiring procedures will not be displaced where they comport with the compact so there you've got that now i understand that your but a bit again where we are now is the commission's position is that corruption is a term that is subject to their interpretation and essentially they have a roving commission not to coin a term to define identify and stamp out any corruption of any sort and you know smoking is an evil practice so you know we're not going to hire anybody who smokes again there there are limits this is an issue where congress approved this compact based on what was stated its purposes were and it didn't approve it for other things thank you mr hughes thank you mr mr maroney you're just coming for a rebuttal is that right yes okay thank you miss sorrell may it please the court phoebe sorrell general counsel of the waterfront commission of new york harbor uh 63 years ago those who wanted to work on the waterfront stood around in a circle while an ila controlled doc boss selected who he wanted to hire employers didn't actually select the individuals that they hired and paid they understood that when they needed labor they had to go to the ila for it and this became known as the shape up and it was beyond a doubt of the root of all evil and the compact says that it led to a loss of fundamental rights and liberties of labor and that regularization of employment to live was was necessary to eliminate oppressive and evil hiring practices affecting longshoremen as it must our analysis starts with the purpose of the act and we look at the um article one the findings and declarations of the compact there the legislators found that the conditions under which waterfront labor were employed were depressing and degrading they were resulting from the lack of any systematic method of hiring corrupt hiring practice practices that waterfront labor suffered from a regularity of employment fear insecurity and that there was a destruction of dignity of an important segment of american labor and the key term here as we've all recognized is corrupt hiring practices we're basically here today because appellants object to signing a certification that the selection of those that they sponsor and hire was done in a fair and non-discriminatory manner that all the correct corrupt hiring practices was very much allied with bracketeering um so nepotism i suppose in some sense yes um how do you go from to uh adopting uh anti-discrimination policies that is um we go back to the legislative history one of the criticisms that appellants have of the district court's opinion and decision is that the judge or that the court failed to look at the complete history and um they it failed to conduct an in-depth analysis of the original compact its contemporaneous contemporaneous legislative history historical context etc etc and what they did is that they submitted what purports to be the original compact's legislative history and contend that nowhere does it mention racial discrimination in hiring well the only problem is they conveniently omitted the other half of the legislative history that specifically discusses this issue and for me honorable judges this is where the fun begins when you actually take a look at the complete history it paints a completely different picture it illustrates that the overriding purpose of the compact was to ensure that employers broke free from the ironclad grip of the ila and employers took back their right for themselves to hire those that they wanted on the waterfront and with regard to racial discrimination it shows that the shape up which was repeatedly denounced as the root of the evil and corrupt hiring practices was specifically shown to facilitate not only criminal activity and corruption but also racial discrimination you will point to the part of the record where congress took into account racial discrimination absolutely so we have we have the state hearings and then we have the congressional hearings at the state hearings that was laid out both in our brief and in the appendix you have the testimony of the ila local uh secretary treasurer um cleopas jacobs and he testifies he says that the longshoreman has been the instrument he's the president of um a predominantly black local and he says that only one-fifth of his 500 person local was given regular work and he testified that the shape up in his words has been the instrument of racial discrimination against our members and consequently has further reduced job opportunities this is the testimony before uh the dewey hearing yes this is before the state is one instance um before well not just his testimony but then you get into the um crime commission special counsel at the dewey hearings actually produces a newsletter and it's entitled the negro longshoreman and it was a march 1952 newsletter that was authored by the rank-and-file longshore person uh longshoreman of that local and they again the newsletter says we negro longshoremen are discriminated against first by our own international officials of the ila who deny us representation of uh or jurisdiction over any peers on the waterfront and the special counsel then says that uh he prompted him to suggest that the program presented by the state crime commission eliminating the shape up entirely and substituting a new form of hiring was highly desirable to attain the very ends that the ila local wanted to accomplish which was the elimination of racial discrimination entirely when mr hughes seemed to indicate that that only a problem which had been recognized in 1953 should be able to be the the does that mean that uh the commission cannot at any time support through amendment uh requirement that women be given equal consideration absolutely not your honor and that's where as you pointed out earlier this compact was so extraordinary you look at the supreme court case of devel versus braisted you look at the uh waterfront commission versus marine and construction uh case the district court case that was affirmed by the third circuit and courts say this was an extraordinary compact because it didn't just approve the or give consent to the compact between the two states but it gave consent to enabling legislation going forward as long as it implemented the purposes of the act and then how do you go from the purposes of the act to adopt the anti-discriminate anti-discrimination policies a new problem it takes us that takes us to the congressional hearings and it takes us to the legislative history and first you go into the triple mca's argument is that um the findings and the declarations they can't they don't state the purposes of the act right and they say that um article one in their brief is the least likely place to find the purposes of the compact and that congress didn't treat the purposes of the compact as a coded reference to article one well you go uh into the introduction of the bill by senator robert hendrickson and he declared and these are his words quote the purpose of the bill can best be stated by referring to article one of the compact which sets forth the findings which shook and rocked the american people on the occasion of their recent public disclosure and then what's what what senator hendrickson did is then he passed the floor uh to senator charles toby and he leading hand in the public disclosure of the findings that were articulated in article one and the first thing that senator toby did was launch into a scathing attack of the ila's practices specifically as they related to racial discrimination what is this what's that when was this uh 1950 1950 july 1953 and it was before the hearings um this is at our addendum page 445 this is the hearing before the senate this is the hearing before the senate where the senate was urged to approve the compact and so he recounted how he had just met with white and black ila members in new orleans and he discovered that the black members were charged more than twice as much as the initiation fee as the white members the white members were charged a hundred dollars the black members two hundred and two dollars and his next words for me are too stirring to paraphrase he says man's inhumanity to man is being exemplified in certain labor circles such labor unions had better take cover they're writing for a fall the time cannot come too soon let us clean them out and then he continues he says cry out america unclean unclean kick them out from joe ryan down joe ryan was the president of the ila he says kick them out from joe ryan down they are no good they are un-american i indict them before the bar of the senate is there language in the compact that embodies the sentiment of this of the statement that you're just alluding to so the issue of fair and corrupt hiring practices we are i'm sorry corrupt hiring practices and and we we're saying that encompasses all of this the issue that has been brought up today and that has been briefed is appellants are saying look it's not in the statute nowhere in the compact does it say anything about the eradication of discriminatory hiring practices based on race we're saying it didn't need to because in 1953 when the compact was approved there was no closed register there was no concept of employee sponsorship right or employer sponsorship all someone had to do was show up at the commission file an application and and they if if they met the qualifications they would be approved and what congress actually did was they that it was illegal to interfere or to induce or to intimidate anyone who was going to try to do that and so that was the only safeguard that they needed right and so what happens is that we fast forward to 1999 and in 1999 we everyone because of containerization everything else that uh council discussed they say okay we need to there's a closed register it needs to be done on a sponsorship basis and that's when we look and say we need to make sure if there's going to be employer sponsorship employer selection it's no longer first come first serve it's no longer an open register we need to make sure there's fair and non-discriminatory language in there and we invited we held hearings this is in the record we invited the triple mca ila nysa everyone showed up they testified at these hearings and they said that this was wonderful this was a collaborative quote collaborative effort between the waterfront commission and the appellants and no one objected to this we said that we specifically included the phrase to protect against possible discrimination this was in our memorandum in mckinney's um we said historically the commission had steadfastly made sure that all persons sponsored were selected in a fair non-discriminatory basis and we said the proposed amendment continues this requirement that was the time no one objected to this no one said nope the waterfront commission has no business ensuring fair non-discriminatory hiring this is outside of your authority waterfront commission um if there had been an issue with 5p and with the certification it should have been brought up there you know it seems that anti-discrimination policies would seem to me to be such a good thing why would anybody really be in opposition to it so uh maybe you can tell me what where is the pressure what what is the animosity towards this measure of the commission to implement anti-discrimination well essentially we have this is a tough war is it agencies fighting each other what what is i think what it is is you have the um and the there were affidavits submitted in um the district court um there are other agencies involved is that correct there are other well here's the thing and this is where we get into why the division yes there's a division of human rights claim pending but we shouldn't have to wait until we get to that point where there is evidence of massive discrimination in the port and other agencies have to come in can become more directly involved in the hiring process we don't want to dictate to them how they should hire we're not interfering with their methods all we're saying is sir you've come up with your hiring plan you've come up with your agreement but the agreement can't be we employers if we need someone we go to the ila and whoever the unless of course there there are no skills or qualifications right but whoever the ila gets we have to go to the pool of the ila so when we said okay well you have to certify we were told well we can't certify because we don't know how the ila got them but we can tell you this of the pool that's given to us by the ila we can tell you we are not discriminating against them we said well you don't have to because if you look at the people i mean that we have serious there's a problem with the ila and so that is i think what's happening the nysa is saying look the ila has been in control of hiring unfortunately still since 1953 and the ila gives them who they want and the nysa has been accustomed to taking them these are the affidavits that were submitted in the underlying in the district court action saying when we need people that we go to the ila the ila uh give us people so you have one thing when you're back in 1999 when you have president um writing to governor pataki saying this legislation is wonderful um and these are his words of equal important importance this legislation makes sure that future additions to the workforce contain a number of women blacks hispanics they say that the first the the sponsorship process doesn't uh get result in a guarantee that any members of the aforementioned groups will be added but now this language will the parties believe that this language is more than adequate to assure that the person sponsored will include a number of women blacks uh and hispanics how do you go now however many years later and say this is unconstitutional waterfront commission you have no business doing this it just completely you know at one point um esteemed council said this doesn't appear in the act again it didn't have to because at the time there was a different hiring framework um one thing if i may um i'd like to get into the issue of judicial deference right because we were asked to brief um whether or not uh the judicial deference is entitled to a bi-state agency and um when we received the court's order we conducted an extensive nationwide uh search we found numerous cases and the first literally had our name written all over it it was bazi versus the waterfront commission and that case was extensively briefed on the 4.4d the a register it um issue but there the issue was whether or not the waterfront commission had properly interpreted a 1982 amendment to section 5p and the very first principle articulated by the court was that quote interpretation given a statute by the agency charged with this enforcement is as a general matter given great weight and deference judicial deference so long as the interpretation is neither irrational unreasonable nor inconsistent with the governing statute close quote and as i said we looked i mean there are two issues here right if chevron difference deference is to be um uh given to the to the agency there's it's a two-step analysis number one you look at the plain unambiguous meaning of the compact and the question is has congress specifically addressed this question and we say yes you uh it has when you look at aggressive and evil hiring practices one can't help but say this includes discrimination based on race sex ethnicity etc but if you still say that this is ambiguous and we need to go one step further that is where i present this beautiful legislative history um that i went into where we have the the the uh legislators at both the state level and the congressional level who were advocating for this who were specifically talking about racial discrimination one of the things in appellant's reply briefs they said well you know congressman toby he was talking about initiation fees you know so what the blacks versus whites have to pay twice as much well how does that have anything to do with racial discrimination in the employment process well back in 1953 a hundred dollars was a lot of money 202 dollars was even that much more and so if the black uh individual could not afford that 202 dollar initiation fee guess what he did not go to work on the waterfront and that was an effective way of discriminating against that individual in employment and so when you have like we then we say um earlier esteemed council said when you look at the compact no one in this room would agree that includes racial discrimination well i would say i respectfully disagree as with the six interns from the waterfront commission who are sitting in the back we disagree based on the plain plain language of the act but also based on the legislative history has the has the commission made any kind of report or assessment of what the waterfront looks like i mean what's the face of the waterfront we have we have and that is where um there is a lot of um discrepancy between the two sides we look at uh local 1804-1 local 1814 these are the ones in there is a huge at one local it was 99 percent uh there was one percent african-american in a local and when you look at uh the fact that they're located in newark new jersey and uh elizabeth and you look at the surrounding geographical regions we were we responded that the numbers were staggering and these numbers were actually um picked up by the division of human rights um and the statistics are in their complaint um now the nysa the ila they'll come back and they'll give you different percentages based on the entire port from main note down uh nova scotia as opposed to just the port of new york and new jersey we look at those who are registered with us they look at everyone who is employed um but in any event we say how can this be a bad thing as this panel has pointed out we're asking them to certify hiring was fair and non-discriminatory how is this something to be objected to you know when we look at judicial deference um the the parties notably didn't uh distinguish or mention any of the cases that we brought up but they did bring up one case which we thought was interesting and it was a waterfront commission of new york harbor versus construction and marine equipment case and the issue there was whether or not state or federal uh law should be um applied when we're when when they're discussing judicial deference the nysa says well they said it should be state deference and this goes against the waterfront commission well if you actually look at the case the court said um we're going to look at it under state law but even then and the court listed the factors it said courts generally place considerable weight on the construction of a statute given by the agency charged with enforcing it and so on and so forth so forth there's a presumption of reasonableness substantial deference has to be awarded and the court said it should be noted however that these decisions on these issues would be the same if decided under federal law um i will uh rely on my brief for the other issues as far as on the 4.4d certification the a register versus the deep sea register um interference with collective bargaining they we are not take a moment to discuss that there are different registers the deep sea register and the a register and whether or not you're entitled to reports or feed uh from both of those sure so um in 1969 the register was split and if you look at our uh regulations it has the uh a register and the deep sea register and so in the bosie case the issue was we had two longshoremen who were who were admitted through the a register who were trying to parlay their way into the deep sea register and we said you can't do that because section 5p the provisions of section 5p they do not permit those who are coming in under the a register to be included in in the longshoremen's register and we were saying at least back at that time um the provisions having to do with first come first serve back when the bosie case um uh transpired the first serve uh first come first serve and the fact that the register had to be open in order for longshoremen to be admitted to the register we're saying that doesn't apply uh to the maintenance workers so we have we're saying the same thing today there is a provision section 5p under section 5p which specifically refers to those maintenance workers who are continually being brought in as longshore persons on that section 5p 5 and there notwithstanding any other provision of this act the commission may include in the longshoremen's register under such terms and conditions as the commission may prescribe and then it lists seven different categories and within one of those categories are those maintenance workers that are continually being brought in um to the a register we are not changing our position from bosie uh the court in bosie said admittedly the language could be a little bit more clear but notably the court deferred to the agency's interpretation of the statute and ruled in the water for recognition favor sorry well thank you very much thank you very mr hughes is mr meriden also going to have two minutes yes yeah thank you i'm glad you're on address that last point um regarding the two registers because it also answers council's rhetorical question as to why the mmca didn't object when 5p was amended in 1999 and that's because 5p didn't apply to a register uh longshoremen which are the only individuals that the mmca members employ has there would have been no reason i'm sorry has the commission taken a formal position with respect to that they did in the bosie case your honor and again one of the problems with district court's decision is the district court didn't ignored the factual assertions that were made by the commission in the bosie litigation and came up with some interpretation of what bosie really meant the entire 5p is the deep sea register it's not picking and choosing different segments of it to apply to different people that is what it is called when it was an ad when in vast legislative history of when the 1999 amendment was the opening statement was we're talking about 5p which is referred to as the deep sea register statute so it doesn't apply to us at all and now in 2000 and never has we've never been required to submit any sort of certification of any sort suddenly in 2013 for reasons best known to themselves the commission decided well now we're going to impose these obligations under a statute that has never before applied to you and that we've taken a position in court doesn't apply to you to now apply to you and they can't do that secondly again your honor i would observe council is taking two contradictory positions one is that it was well known that discrimination was serious issue in 1953 and that's why that's one that was clearly what they had in mind when they instituted when they said corruption but then says well it really only became evident as a problem in 1999 and that's why we had to amend the statute it's either one or the other if discrimination was viewed by the congress as such a serious issue or by the legislature you would think that somewhere well somewhere in the statute it would have said what's the matter with doing something now again to come back to the fundamental issue of the statute cannot can only be amended by the state legislatures again you're talking about a unique thing here state legislatures being permitted to amend a federal law and therefore it has to be within the narrow scope of what was protected what was the was concern the congress was concerned with in 1953 i'm sorry old says that correct practices includes corrupt practices in hiring that is correct that means discrimination discrimination in hiring i don't think that was viewed by the i mean corrupt doesn't necessarily mean there was a passing of money corrupt i think in this hiring to certain groups and that there were excluded groups and from the very beginning there have been racially identifiable excluded groups again your honor i would just observe all of that relies on saying that article one sets forth the the the basis for the statute the body of the statute sets forth what it is prohibiting and what the practices work and i dare again without casting aspersions on a congress of 60 some odd years ago is an awfully good likelihood that maybe they didn't put something in about discrimination because they would have had a concern that it would not have passed the congress in 1953 mr hughes thank you very much mr meredith so is there any problem with the ira when they present lists to the employers to say that the the workers on this the these lists were selected without discrimination were selected in compliance with anti-discriminatory laws the union makes referrals of potential applicants and the employer selects from those referrals the problem you excuse me your honor is twofold one council is trying to rewrite history well i get back to my question when you make referrals can you say we are making these referrals uh the the persons selected on these for these referral lists have been selected in a manner which complies with any federal anti-discriminatory law i think they are being selected in a matter that complies with the discrimination can you certify that no i don't think we would certainly unspoken they don't have jurisdiction if you're going to do it why can't you certify it they don't have jurisdiction over the union i'm not talking about the jurisdiction i'm talking about the ila why can't you certify the people on this list were selected in a in a manner compliant with the anti-discrimination anti-discrimination laws submitted to whom your honor when you submit it to the employers as required in the process right when we refer it to the when we refer it to the employer i don't that we might be able to work out something like we've never done anything okay but maybe you ought to do it no it's a good food for thought i agree your honor but let me just two points if i may the first is in 1999 when the certification went in after that time there were nine openings over 2 000 people brought in certifications provided for all of those individuals no objection by the waterfront commission prior administration when the court suggested that this might be a turf war that's exactly what it is my client is not and nor is new york should be engaged in any discriminatory behavior our statistics are very sound we have 25 percent african-american if you go to the waterfront you see 99 white longshoremen they're not 99 percent you're in your honor 20 no 25 when you when judge fuentes asked the question of miss oreo regarding what's the composition of the face of she answered quite artfully by focusing on local 1814 which is in brooklyn where there's no work 80 of the work now is in new jersey the face of the waterfront not the union as a whole the face of the waterfront in the port of new york and new jersey the waterfront that we're talking about is 25 african-american 15 latino and in response to your question we have over 11 percent women and it's gotten better because the industry adopted a hiring plan and with giving 51 percent of the of the referrals of the new hires to people who have served in the war on terror and were honorably discharged so the industry i think is doing better than any other i can't think of another industry that has dedicated 51 percent of the new jobs to people who are veterans and served our country but what is offending to us is as if we've engaged in discrimination don't there's been no volume of discrimination by any of our clients but what the waterfront commission is doing now as you say a turf war they're using it to shut down if we don't like the the percentages of the people you're referring you can't hire you don't get a hearing you don't get any process there's no uh determination when you get to call witnesses or determine the commission just says no we're not going to register them they did that with eight white longshoremen they just refused to register them and that's what we're we're finding offensive and going back to going back to the 53 compact congress clearly didn't envision that the waterfront commission would have the right to just turn off the spigot and say the employers can't hire people and why we know that in part is article 15 of the compact said there's no interference with the method between union and management for the selection of employees if they wanted to remedy discrimination at that time they clearly wouldn't say look we're going to keep it in with the union and management to keep their uh existing union referrals selection of in in place so the position has worked well we're we're very proud of our statistic we're proud of our new hiring plan your statistic is widely diversion from the one i heard from miss sorrel but miss sorrel statistic didn't answer your question your honor she said you asked what the face of the waterfront is and she answered the locals is in brooklyn there's no work in brooklyn brooklyn at one time had a lot of work in the point so if you have no work in brooklyn the people who join the brooklyn local can't get in work they come over to new jersey brooklyn stays it's predominantly i don't know i wouldn't even say it's overwhelmingly white because there's a number of hispanics there but the statistics are not going to get better but the local is not going to grow in size the work is in new jersey and going back to even the the reference she made to the new york state division of human rights there's no allegation that any of the jersey the jersey side there's no discrimination finding there's no action pending against anyone and what we're offended by is that the commission can just say by fiat that oh you're engaged in discriminatory behavior we're not going to let you register these people and that when we looked at it that is inconsistent with this court's and that's why we came up the industry came up with the hiring plan to get preference to veterans that are returning 51 and if that doesn't include or improve the diversity i'll be shocked and it has because we know 60 of the new hires are minority i can understand what you're saying now but you know historically it appears that self-policing hasn't worked self-policing hasn't worked in yeah i'm not in ensuring a diverse workforce in the port i i think you want to perhaps it hasn't worked for other reasons in the sense the register was closed for a number of years when the register was closed and the industry can't hire people if you remember mr caruso uh spoke about the problems in the industry caused by containerization the register was closed except for as i say you know nine nine short openings the statistics aren't going to improve you know the workforce gets frozen the demographics change the world changes but the workforce is staying the same because there's no opportunity unfortunately but that isn't as a result of the discriminatory behavior on our part on our part okay mr madam and thank you very much thank you um i'd like to request of counsel that we get a transcript of these proceedings you can share the course uh when you get a moment please speak to the clerk and you'll get directions from the clerk thank you very much sir thank you